UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **PETER SABINE, on behalf of F.S.,** § § | |
| **Plaintiff,** § § | |
| v. § § | **Case No. 4:24-cv-01225-O** |
| **CARROLL ISD, et al,** § § | |
| **Defendants.** § § | |

**MEMORANDUM OPINION & ORDER**

Before the Court are Defendant Carroll Independent School District's ("CISD") Motion to Dismiss Plaintiff's First Amended Complaint and Brief in Support (ECF Nos. 11–12); Plaintiff Peter Sabine's Response (ECF No. 14); and CISD's Reply (ECF No. 17). After examining the relevant authorities and arguments, the Court **GRANTS** CISD's Motion.

**I.    BACKGROUND[1]**

Plaintiff's child, F.S., while a special-education student at Carroll Middle School, was sexually assaulted at least thirteen times by another male student, N., in the special-education program. F.S. is non-verbal male who suffers from attention deficit disorder, developmental delays, and autism.

The sensory room within the special-needs classroom at Carroll Middle School is utilized as a "safe space" for overstimulated students. In this sensory room, N. violated F.S. by "inappropriately touching [F.S.] on or around his genital area and seeking sexual gratification in

---

[1] Unless otherwise cited, the Court's recitation of the facts is taken from Plaintiff's First Amended Complaint. *See* Pl.'s First Am. Compl., ECF No. 6. At the Rule 12(b)(6) stage, these facts are taken as true and viewed in the light most favorable to Plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).

1

front of F.S." During the 2023–2024 school year, thirteen occurrences went undetected that were later discovered on video. Because the footage only dated back to February 7, 2024, the true duration and number of sexual assaults by N. against F.S. is unknown.

Because F.S. is non-verbal, he has alternative means of communication. F.S. will increase his iPad's volume, state "a-hup" to ask for help, or say "no" or "ow." Using these means, F.S signaled for help to his teachers following Occurrences #1, #2, #4, #7, #10, #11, #12, and #13. It was not until the thirteenth videoed occurrence that a teacher noticed F.S. was being assaulted.

Occurrence #1: On February 7, 2024, at 1:25 p.m., F.S. and N. were in the sensory room together. N. touched F.S. on the outside of his pants over his penis and F.S. moved his leg to reject the touch. N. then lifted F.S.'s waistband and underwear to look at F.S.'s penis. F.S. objected again, then N. masturbated and ejaculated in front of F.S. and wiped his ejaculate on a pillow F.S. often uses. During Occurrence #1, Robin Gondeck, the special-education teacher trainer who was filling in as interim teacher, was in the classroom working one-on-one with another student. Tamia, the paraprofessional for the classroom, was in the attached kitchen on her lunch break. Following Occurrence #1, F.S. turned up the volume on his iPad, a common way he tries to communicate.

Occurrence #2: On February 12, 2024, at 1:19 p.m., F.S. and N. were in the sensory room when N. dry humped F.S. Kim, a special-education paraprofessional, was alerted to something in the sensory room and walked over right after N. removed himself from on top of F.S. Once Kim entered the sensory room, F.S. turned up the volume on his iPad, seemingly trying to communicate. Jackie, a special-education paraprofessional, was at her desk in the classroom with the 8th grade student helpers ("HALOs").

Occurrence #3: On March 5, 2024, at 1:33 p.m., F.S. and N. were in the sensory room. N. pulled down F.S.'s pants slightly, touched him, and then dry humped him. N. was constantly

2

looking up to see if anyone could see him. Throughout Occurrence #3, N. appeared to be talking to someone on his computer. Kim and Tamia were both working with another student outside the sensory room.

Occurrence #4: On March 18, 2024, at 1:41 p.m., F.S. and N. were in the sensory room. N. tried to hug F.S., then laid on top of F.S. and dry humped him. N. pulled back F.S.'s waistband and underwear, and F.S. pushed his legs tightly together to block N. from touching his penis. N. laid down next to F.S. and pushed F.S. onto his back. F.S. said, "a-hup," which is how he asks for help. Opal, the new special-education teacher, and Jackie were sitting in the classroom at Jackie's desk. Jackie entered the sensory room then took F.S. to the bathroom, misreading his request for help.

Occurrence #5: On March 21, 2024, at 1:31 p.m., F.S. and N. were in the sensory room. N. masturbated, ejaculated, then pulled his pants down. N. pulled F.S.'s pants down. N. humped F.S. penis-on-penis. N. tried to masturbate F.S., then N. took F.S.'s hand and put it on N.'s penis and tried to get F.S. to masturbate N. Next, N. rubbed F.S.'s head and appeared to say, "well done." Jackie was working with another student in the classroom, and the boys were alone.

Occurrence #6: On March 26, 2024, at 1:34 p.m., F.S. and C., a third-grade special-education student, were lying on the sensory room floor. N. entered the room and masturbated in front of F.S. Outside the sensory room, Opal and Tamia were both working with another student.

Occurrence #7: On April 3, 2024, at 1:56 p.m., F.S. and N. were in the sensory room. N. pulled down his own pants and then F.S.'s pants. N. humped F.S. with penis-on-penis contact, then proceeded to masturbate. F.S. appeared to fight off N., saying "no," "ow," and "ah-yeh." Jackie was working with another student in the main classroom; no one else was in the sensory room.

Occurrence #8: On April 15, 2024, at 1:32 p.m., N. masturbated in front of F.S. in the sensory room. Opal was at her desk, which is positioned to allow a direct view into the sensory room. Jackie walked by the sensory room but did not look inside.

Occurrence #9: On April 23, 2024, at 1:32 p.m., N. sat near F.S., who was lying on the ground. N. attempted to capture media of F.S. on his laptop, then N. masturbated next to F.S. Jackie was in the main classroom with another student. Tamia was in the kitchen eating lunch.

Occurrence #10: On April 24, 2024, at 1:22 p.m., N. came into the sensory room and tried to touch F.S. In response, F.S. repeatedly walked out of the sensory room, into the main classroom, and back into the sensory room. F.S. was holding his iPad by his ear and making noise. In the sensory room over the next forty minutes, N. masturbated four times. F.S. kept coming back into the sensory room because that is where he was supposed to be at that time of day. N. pulled down F.S.'s pants and tried to masturbate F.S., then N. got on top of F.S. and humped him with penis-to-penis contact. F.S. made a barrier of pillows and tried to hide behind them. N. blocked F.S.'s exit from around the pillows and trapped F.S. in place. Multiple paraprofessionals and HALOs were in the classroom; none were in the sensory room. Nobody paid attention to F.S. making noise.

Occurrence #11: On April 26, 2024, at 1:23 p.m., F.S. was in the sensory room. N. entered the room, rubbed against F.S., and tried to hug F.S. In response, F.S. started singing, making noise, and walking around the room. Jackie came into the room and reprimanded F.S. for making noise.

Occurrence #12: On May 1, 2024, at 3:33 p.m., N. rubbed against F.S. front-to-front while they were standing. F.S. got agitated and started throwing around his iPad. Opal came into the sensory room, reprimanded F.S., and took away his iPad. F.S. buried himself under the pillow.

Occurrence #13: On May 16, 2024, at 1:59 p.m., F.S. was lying down in the sensory room. N. came into the room and F.S. was noticeably agitated. F.S. started rolling around the room. N.

pulled his own pants down and got on top of F.S., who yelled "no" and "get it off." Jackie and another paraprofessional had taken another student to the bathroom. Jackie went from the bathroom to her desk next to the bathroom. Jackie stood up and walked toward the door, where she could see into the sensory room. Jackie saw N. on top of F.S., went into the sensory room, and repeatedly asked N. "why."

F.S.'s parents, including Plaintiff Peter Sabine, were informed of the incident 27 hours later at the end of the following school day.

On May 19, 2024, Principal Shatina Lewis called Plaintiff and informed him that she watched the video of Occurrence #13. On May 20, 2024, Plaintiff watched the video of Occurrence #13 with Principal Lewis, School Resource Officers, and another district official present. The videos revealed that N. was sometimes talking to someone on N.'s laptop or videoing the encounters. Due to N. video recording his sexual exploitation while at Carroll Middle School, the federal agencies have been brought in to investigate N.'s actions.

F.S. did not return to school for the final week of the 2023–2024 school year. F.S. also did not attend the summer portion of the extended school year. Since the initial incident, F.S. has been forced to spend time with the offender during classes and in the school hallways, causing severe mental and emotional trauma. F.S.'s entire life has changed because of the assault, including but not limited to: F.S. has developed anxiety and depression; F.S. has become withdrawn; F.S. has sought counseling; and F.S. has faced ongoing harassment within CISD's school grounds.

F.S.'s father, Peter Sabine, initiated this lawsuit on December 13, 2024, alleging a single claim against CISD and Jane Does under 42 U.S.C. § 1983. CISD moved to dismiss the lawsuit, and the Motion is ripe for the Court's review.

## II.     LEGAL STANDARD

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Rule 8(a) pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy this standard, the defendant may file a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Unlike a "probability requirement," the plausibility standard instead demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 570). Where a complaint contains facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the Court may not accept legal conclusions as true. *Iqbal*, 556 U.S. at 678–79. To avoid dismissal, pleadings must show specific, well-pleaded facts rather than conclusory allegations. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). "When there are well-pleaded factual allegations, a court should

assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

A court ruling on a motion to dismiss "may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citation and internal quotation marks omitted).

### III.  ANALYSIS

Sabine alleges a single § 1983 claim under a theory of municipal liability.[2] CISD moves to dismiss Sabine's § 1983 claim on the grounds that Sabine fails to: (1) identify a state actor responsible for the alleged constitutional violation, and (2) demonstrate CISD's municipal liability.[3] The Court agrees with CISD that Sabine fails to state a § 1983 claim and thus does not address whether CISD is liable as a municipality. CISD's Motion to Dismiss is **GRANTED**.

The deprivation of constitutional rights by persons acting under color of law is prohibited by 42 U.S.C. § 1983. "Section 1983 provides a private cause of action against those who, under color of law, deprive a citizen of the United States of 'any rights, privileges, or immunities secured by the Constitution and laws.'" *Goodman v. Harris Cnty.*, 571 F.3d 388, 394–95 (5th Cir. 2009) (quoting 42 U.S.C. § 1983).

CISD argues that Sabine's "pleading is devoid of any allegation that F.S. was abused at the hands of a state actor," and thus, his "allegations are insufficient to state a claim for a violation of F.S.'s substantive due process rights under the Fourteenth Amendment pursuant to Section 1983."[4] Sabine responds that "a state actor is not required to be involved in the assaults themselves. In

---

[2] *See* Pl.'s First Am. Compl., ECF No. 6.
[3] Def.'s Mot. Dismiss 1, ECF No. 11.
[4] *Id.* at 5.

cases involving student-on-student assaults, the analysis shifts to whether the school district or its officials acted with deliberate indifference to the risk of harm."[5] Sabine is incorrect. Although CISD's depiction of the law is incomplete, CISD comes closer to articulating the proper legal standard in this case. And, in applying the proper legal standard, the Court concludes that Sabine is unable to establish a substantive due process violation under § 1983.

This case requires a straightforward application of the law recited in *Doe ex rel. Magee v. Covington County School District ex rel. Keys*, 675 F.3d 849 (5th Cir. 2012), given well-established Supreme Court and Fifth Circuit precedent. Here, as there, Sabine asserts a violation of his constitutional right to bodily integrity, based not on the fact that a teacher or other state actor personally molested F.S., but that a third party—another special-education student—did. Because a non-state actor is alleged to have molested F.S., Sabine must establish that CISD "had a constitutional duty to protect [F.S.] from non-state actors. This duty, in turn, may exist if there is a special relationship . . . between [F.S.] and his school." *Id.* at 855. Unless Sabine can establish this special relationship, Sabine cannot establish a violation of F.S.'s substantive due process rights on the part of CISD.[6]

Although the parties have not briefed whether there is a special relationship in this case, the Fifth Circuit has "explicitly held that the state does *not* create a special relationship with children attending public schools." *Id.* at 856. "Public schools do not take students into custody and hold them there against their will in the same way that a state takes prisoners, involuntarily committed mental health patients, and foster children into its custody." *Id.* at 857–58. The fact that F.S. has "special vulnerabilities" does not change this. *Id.* at 860 (adopting the Ninth Circuit's reasoning that "the existence of a special relationship does not depend on the characteristics of the

---

[5] Pl.'s Resp. 4, ECF No. 14.
[6] *See infra* Section IV explaining why the Fifth Circuit has not embraced alternative theories.

individual"). A panel of the Fifth Circuit has already held that the special relationship exception did not apply where a special-education student was sexually assaulted by another student. *Teague v. Tex. City Indep. Sch. Dist.*, 185 Fed. App'x 355, 357 (5th Cir. 2006). Therefore, Sabine cannot establish a violation of a constitutional right.

Sabine incorrectly seeks to establish a constitutional violation under a theory of municipal liability, namely, that CISD was deliberately indifferent in failing to take adequate precautions.[7] But "proper analysis requires us to separate two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). *Covington* explains why Sabine's conflation of these two issues is wrong: "Without a special relationship, the school had no constitutional duty to protect [F.S.] from private actors such as [N.], and the question of its alleged deliberate indifference is simply immaterial." 675 F.3d at 863. As in *Covington*, "[b]ecause [the Court] finds no special relationship, [it does] not address whether the school's alleged actions [or inaction] . . . amounted to 'deliberate indifference.'" *Id.*

## IV. LEAVE TO AMEND

Sabine requests leave to amend his Complaint should the Court find it inadequate.[8] If a plaintiff's pleadings are deficient under Rule 12(b)(6), a district court should "freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). Rule 15(a) even "evinces a bias in favor of granting leave to amend." *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 566

---

[7] Pl.'s First Am. Compl. 10–12, ECF No. 6. Alternatively, Sabine pleads that "Defendant CISD as a public school district is vicariously responsible for actions of employees acting within the scope of their employment." *Id.* at 12. But the law expressly forbids premising a § 1983 claim on a theory of *respondeat superior*. *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658, 691 (1978).
[8] Pl.'s Resp. 9, ECF No. 14.

(5th Cir. 2002). But "leave to amend under Rule 15 is by no means automatic." *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003). One of the permissible reasons for denying a request for leave to amend is if the amendment would be futile. *Id.*

Here, any proposed amendments would be futile. Apart from the special-relationship exception, the Fifth Circuit in *Covington* considered two alternative theories for establishing a school district's liability for private violence under § 1983. The first is "the so-called 'state-created' danger theory of liability." *Covington*, 675 F.3d at 863. It is "so-called," because [u]nlike many of our sister circuits, [the Fifth Circuit] ha[s] never explicitly adopted the state-created danger theory." *Id.* at 864.

But even if the Fifth Circuit "were to embrace the state-created danger theory, the claim would necessarily fail" for the same reason as in *Covington*. *Id.* at 866. Sabine does "not allege that the school knew about an immediate danger to [F.S.'s] safety, nor can the court infer such knowledge from the pleadings." *Id.* at 866 (emphasis added). Sabine at most alleges facts suggesting the supervisors should have known about the molestation.[9] This does not demonstrate that F.S. was a "known victim," however. *See Saenz v. Heldenfels Bros., Inc.*, 183 F.3d 389, 392 (5th Cir. 1999) ("This 'state-created danger' theory is inapposite without a known victim.").

The final theory discussed in *Covington* is also futile. The Supreme Court has recognized a due process violation when a state actor's conduct "shocks the conscience." *Rochin v. California*, 342 U.S. 165, 172 (1952). But "[t]o allow [Sabine] to proceed on a shocks the conscience theory without first demonstrating a constitutional duty to protect would be wholly inconsistent with *DeShaney*."[10] *Covington*, 675 F.3d at 869. In other words, the principle that the Fourteenth

---

[9] Pl.'s First Am. Compl. 3–10, ECF No. 6.
[10] *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189 (1989), is the Supreme Court case clarifying that governmental entities have no constitutional duty to protect individuals from private violence, absent a special relationship.

Amendment was enacted to "protect the people from the State, not to ensure that the State protect[] them from each other" would still apply. *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989).

Last, it would be futile to allow Sabine to amend his Complaint to join the Jane Doe defendants and assert claims against them in their individual capacities, as they are entitled to qualified immunity. Because Sabine cannot establish a constitutional violation, as the Court has explained, he cannot overcome qualified immunity.

In holding that Sabine's federal lawsuit is futile, the Court does "not suggest that schools have no obligation to insure that their students remain safe from acts of private violence." *Covington*, 675 F.3d at 869–70. Although Sabine cannot state a claim under the Constitution, "[s]tate law provides the appropriate legal framework to address [F.S.'s] injury." *Id.* at 870.

## V.   CONCLUSION

For the foregoing reasons, CISD's Motion to Dismiss is **GRANTED**. Sabine's lawsuit is **DISMISSED with prejudice**.

**SO ORDERED** on this **29th day of August, 2025**.

_Reed O'Connor_
**CHIEF UNITED STATES DISTRICT JUDGE**